# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Shenitta Ewing,**

        **Plaintiff,**

**v.**                                        **Case No. 16-cv-2641-JWL**

**United Parcel Service, Inc.,**

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff filed this lawsuit against her former employer, United Parcel Service, Inc. ("UPS"), alleging that UPS terminated her employment on the basis of her race. Plaintiff's race discrimination claim is asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion for summary judgment (doc. 20). As will be explained, the motion is granted.

**I.  Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Defendant United Parcel Service, Inc. ("UPS") is a package delivery company. Plaintiff Shenitta Ewing, an African-American, began her employment with UPS in March 2012 as a Customer Service Representative in the auto injury claims department at UPS's facility in Overland Park, Kansas. During plaintiff's employment, all UPS employees at the Overland Park facility were subject to UPS's Personal Appearance Guidelines, which state: "Hairstyles and hair color should be worn in a businesslike

manner." The policy seeks to avoid those extremes in appearance that UPS believes are out of place in a business environment. It is uncontroverted that the policy prohibits UPS employees from maintaining hair colors such as purple, pink, fuchsia, crimson and burgundy.

The evidence is uncontroverted that UPS management enforced the Personal Appearance Guidelines on several occasions with respect to hair color. For example, in April 2014, Jessica Fox, a Caucasian employee who, like plaintiff, worked as a customer service representative at the Overland Park facility, reported to work with fuchsia-colored hair. Ms. Fox was instructed by her supervisors that her hair color did not comply with UPS's guidelines and that she needed to change it. Ms. Fox changed her hair color within one week in order to comply with the guidelines. In June 2014, plaintiff reported to work with "micro braid extensions" in her hair. Plaintiff testified that she had approximately 150 braids put into her hair. Plaintiff testified that the braid extensions were burgundy with blond highlights. The burgundy color of the extensions was intended to match the color that plaintiff typically wore in her hair—a crimson rinse that plaintiff has utilized in her hair for the duration of her employment with UPS.[1]

An employee reported the guideline violation to Kyra McDonald, who is African-American and has worked at the facility as a human resources manager for 13 years. Ms. McDonald counseled plaintiff that her hair style and color did not comply with the guidelines and that she needed to change it. Two other members of UPS management were present at this

---

[1] In several respects, plaintiff's deposition testimony directly contradicts her sworn affidavit. Most of the contradictions are over minor issues, but the contradictions have unnecessarily complicated the record. Plaintiff, for example, testified in her deposition that she used a crimson or burgundy "rinse" in her hair for the duration of her employment and she insisted that dyes and rinses are two distinct products with different effects. In her affidavit, however, plaintiff avers that she used a burgundy "hair dye" throughout her employment.

meeting—Brenda Ransburg, an African-American female who was (and remains today) an Operations Manager at the Overland Park facility, and Gayle O'Grady, a Caucasian female who was plaintiff's immediate supervisor at the time. Plaintiff asserts that Ms. O'Grady was the person who reported plaintiff's hair color to Ms. McDonald. Although Ms. O'Grady wanted plaintiff to remove the braids immediately, Ms. McDonald understood that the braids were expensive to get put in and she told plaintiff that she could wear the braids for several weeks so long as she kept the braids pinned up rather than hanging down. Plaintiff testified that she removed the braids within two months of this meeting. According to plaintiff, after she removed the braids, she simply wore her "normal" hair color that she achieves by utilizing a crimson or burgundy rinse once a month.

In April 2015, plaintiff changed her hair again in preparation for a wedding. According to plaintiff, she went through "another expensive hair process" that involved a "perm" on her hair, a rinse, and hair extensions. Plaintiff testified that her hair color was a "brighter burgundy" in light of the changes she made to it.[2] On April 27, 2015, Ms. McDonald received complaints from other employees that plaintiff's hair color violated the guidelines and that it would be unfair to allow plaintiff to violate the guidelines when the guidelines were enforced with respect to other employees. Ms. McDonald averred that plaintiff's hair color was "bright fuschia." Regardless, it is uncontroverted that plaintiff's hair color was almost identical to the color that Ms. Fox was instructed to change the previous year. Several of plaintiff's supervisors told Ms. McDonald that they had previously counseled plaintiff on multiple occasions about the fact that

---

[2] Plaintiff testified that using a color rinse after having a "perm" put on her hair results in a brighter hair color.

her hair color violated the guidelines.  Ms. McDonald avers that she believed that plaintiff's hair color was creating a distraction in the workplace.  Ms. McDonald met with plaintiff and reminded plaintiff of the previous counselings she had received regarding the guidelines and informed her that her hair color did not comply with the guidelines and needed to be changed. Plaintiff testified that Ms. McDonald again understood the expense that plaintiff had incurred in connection with the hair style and color and further understood that plaintiff could not immediately put another chemical on her hair because her hair would come out.  For these reasons, Ms. McDonald allowed plaintiff additional time to change her hair color.  Plaintiff testified that Ms. McDonald told her that she had until mid-June to change her hair color and that, in the meantime, she could wear a scarf over her hair or a wear a wig.[3]  Ms. McDonald issued plaintiff a final written warning on April 29, 2015 that indicated that any further violations could result in the termination of plaintiff's employment.  Plaintiff signed the warning that same day and she agreed to change her hair color by mid-June 2015.

On June 16, 2015, both Ms. McDonald and Ms. Ransburg observed that plaintiff's hair color did not comply with UPS's guidelines.[4]  Ms. Ransburg discovered that plaintiff was subject to a final written warning concerning her hair color and that she had failed to comply with the guidelines despite having ample time to change her hair color.  Ms. Ransburg met with plaintiff that day and terminated plaintiff's employment for failure to comply with UPS's Personal Appearance guidelines.  Plaintiff does not dispute that Ms. Ransburg told her that she

---

[3] Plaintiff's testimony reflects that, on occasion, plaintiff wore a blond wig to work.  It is undisputed that plaintiff's blond wig complied with the Personal Appearance guidelines.
[4] The record reflects that plaintiff had been wearing the blond wig prior to June 16, 2015 but was not wearing the wig on June 16, 2015.

was terminating plaintiff's employment because plaintiff's burgundy hair color violated UPS's Personal Appearance guidelines. Plaintiff, however, told Ms. Ransburg that she had changed her color as she had been instructed to do. According to plaintiff, she had had a brown hair dye put over her burgundy rinse at some point prior to June 16, 2015. Nonetheless, plaintiff conceded in her deposition that there was still "burgundy" in her hair at the time of her termination and she expressly stated in response to an Interrogatory that her hair color on the date of her termination was "burgundy."

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

### III.     Race Discrimination Claim

In the pretrial order, plaintiff asserts that UPS terminated her employment on the basis of her race.  Plaintiff concedes that she has no direct evidence of discrimination, and her claim is therefore analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 627 (10th Cir. 2012).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id.*   To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."  *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  If she establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id*.  If defendant meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent."  *Id*. (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

*A. Prima Facie Case*

In support of its motion for summary judgment, UPS first contends that plaintiff cannot establish a prima facie case of discrimination.  Specifically, UPS contends that plaintiff admitted in her deposition that her lawsuit is "based on her hair color," which is not a protected class under Title VII.  The court rejects UPS's narrow reading of plaintiff's deposition testimony.  She did not testify that her lawsuit was "based on her hair color."  Rather, plaintiff responded

6

"Yes" when asked whether "the basis of your lawsuit is that you were terminated because of the hair color, right?" Nothing in plaintiff's response is inconsistent with her theory that UPS, by terminating plaintiff for a violation of the Personal Appearance guidelines but not terminating Caucasian employees for similar violations, discriminated against plaintiff on the basis of her race.

UPS also contends that plaintiff has come forward with no evidence giving rise to an inference of discrimination. Here, UPS contends that plaintiff's "similarly situated" evidence (the only evidence that plaintiff offers to establish pretext) fails because she cannot establish that she was treated less favorably than non-African-American employees. Because plaintiff relies on the same evidence to establish a prima facie case of discrimination and to raise an inference of pretext, the court addresses that evidence at the third stage of the *McDonnell Douglas* analysis. *See Hannah v. Sandia Corp.*, 2017 WL 6375605, at *7 (D.N.M. Dec. 13, 2017) (deciding motion on pretext issue where plaintiff relied on same evidence to support pretext and third element of prima facie case); *Davis v. Dillon Companies, Inc.*, 2014 WL 4980430, at *6 (D. Kan. Oct. 6, 2014) (to avoid a duplication of analysis at the prima facie and pretext stages where plaintiff relied on same evidence at both stages, court moved directly to pretext analysis); *see also Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173-74 (10th Cir. 2005) (where comparison to others similarly situated is the method chosen by the plaintiff to raise an inference of discrimination, evidence may be analyzed at the pretext stage)

*B. Pretext*

Having rejected UPS's arguments concerning plaintiff's prima facie case, the court turns to whether UPS has met its burden to articulate a legitimate, nondiscriminatory reason for plaintiff's discharge. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.* According to UPS, plaintiff's employment was terminated based on plaintiff's repeated violations of the Personal Appearance guidelines on multiple occasions; the fact that she had been issued a final written warning; and plaintiff's failure to keep her agreement to comply with the guidelines. The burden of proof, then, shifts back to plaintiff to show that UPS's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id.* at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013). In determining whether the proffered reason

is pretextual, the court examines "the facts as they appear to the person making the decision, not as they appear to the plaintiff." *Id*. The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id*.

Plaintiff contends that a reasonable jury can find pretext in this case by comparing UPS's treatment of her with its treatment of a Caucasian employee who, like plaintiff, violated the Personal Appearance guidelines concerning hair color. To be sure, evidence that a similarly situated employee received better treatment can suggest that the employer's alleged nondiscriminatory reason is pretextual. *Roberts v. International Business Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). As the Circuit has explained, however, "to provide a basis for reliable comparison, the other employee must, in fact, be similarly situated—that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree. And it falls on the employee alleging discrimination to rule out alternative explanations for the differential treatment." *Id*. (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120-21 (10th Cir. 2007)).

Plaintiff contends that Denyse Whiting, a Caucasian employee who worked in the same facility, had "virtually identical hair color" to plaintiff but was retained and even promoted. Plaintiff has attached a photograph of Ms. Whiting and contends that the photograph is an accurate depiction of the color of Ms. Whiting's hair during the time she worked at UPS. She contends that Ms. Whiting was not instructed to change her hair color at any time. For several reasons, plaintiff's comparison to Ms. Whiting does not establish pretext. In her deposition, plaintiff was not able to authenticate the photograph or lay a foundation for it. In contrast, an

9

affidavit provided by Ms. Whiting establishes that the photograph is not an accurate representation of her hair color at the time she worked for UPS and that the color in the photograph, including her hair color, was altered through the use of "filters" available on the social media application "Instagram." Ms. Whiting avers that she used various filters on the photograph before posting it. According to Ms. Whiting, the color depicted in the photograph supplied by plaintiff is "much brighter" than her hair color actually was at the time the photograph was taken. She avers that, during her employment with UPS, her hair color was never the color it appeared in the photograph and that, during her employment with UPS, her hair color was always a "medium auburn brown." Plaintiff, then, has not established that Ms. Whiting is "similarly situated" to her for purposes of establishing pretext.

Moreover, the record evidence demonstrates that UPS enforced the Personal Appearance guidelines with respect to Caucasian employees with "extreme" hair colors. In April 2014, Ms. Fox was told by UPS management to change her "fuchia" hair color because it did not comply with the pertinent guidelines. Ms. Fox complied and changed her hair color within one week. On June 15, 2015, the day prior to plaintiff's termination, a Caucasian employee named Mary Phillips reported to work with hair that had been dyed bright red in color. She was told by UPS management to change her hair color because it did not comply with the guidelines. Ms. Phillips complied and changed her hair color within one week. Since plaintiff's termination, two other Caucasian employees have been counseled about hair color. In May 2016, Mary McNamara reported to work with purple hair. She was told by Ms. McDonald and Ms. Ransburg that her hair color did not comply with the guidelines and needed to be changed. Ms. McNamara changed her hair color within one day in order to comply with the guidelines. In

February 2017, Cristie Evangelista reported to work with hair that had been dyed bright red. Ms. Evangelista was told by UPS management to change her hair color because it did not comply with the pertinent guidelines. Ms. Evangelista complied and changed her hair color within one week. Plaintiff's efforts, then, to establish pretext by a comparison to similarly situated Caucasian employees fails.

Plaintiff also attempts to cast doubt on UPS's proffered reason for terminating her employment by arguing that UPS improperly relied on "subjective criteria" concerning personal appearance and appropriate hair color in rendering its decision. According to plaintiff, this subjectivity is sufficient to establish pretext because the reasons are tied only to the perceptions of certain supervisors and not to objective criteria. This argument is rejected. While the use of subjective criteria in connection with a termination decision may be relevant evidence of pretext in certain circumstances, those circumstances are not present here. *See Matthews v. Euronet Worldwide, Inc.*, 271 Fed. Appx. 770, 775 (10th Cir. Mar. 28, 2008). To begin, while the Personal Appearance guidelines as written may seem subjective in nature (requiring that hairstyles and hair color be worn "in a businesslike manner"), it is undisputed that UPS enforced the "hair color" aspect of that guideline only with respect to those employees who reported to work with extreme hair colors such as fuschia, purple, pink and crimson. UPS, then, was certainly utilizing objective measures in applying the guideline to its employees. Moreover, plaintiff does not dispute that her hair color at the times in question violated the Personal Appearance guidelines under any standard. And while it is certainly not dispositive, the fact that the two primary individuals enforcing the guidelines as to plaintiff are African-American certainly undermines plaintiff's theory that UPS utilized subjective criteria such as "appropriate

hair color" to mask discrimination against African-American employees. Further undermining this theory is that plaintiff comes forward with no evidence that the Personal Appearance guidelines were ever applied or enforced as to any other African-American employee. Finally, at least one of UPS's reasons for terminating plaintiff's employment was not subjective at all—plaintiff's failure to keep her agreement to comply with the Personal Appearance guidelines.

Lastly, plaintiff suggests that a reasonable jury could find pretext because plaintiff's "hair color remained the same during the course of her employment over four years" without incidence and then UPS made an "abrupt" decision to terminate her employment. This argument is directly contradicted by plaintiff's deposition testimony and affidavit in which she details the various changes to her hair color during the course of her employment. It is further contradicted by plaintiff's agreement to change her hair color to comply with the policy and then her subsequent breach of that agreement. As such, the argument lacks merit.

Ultimately, the court concludes that the facts of this case, viewed in the light most favorable to plaintiff, do not give rise to an inference of pretext in the context of plaintiff's discrimination claim. Plaintiff, then, has failed to meet her burden of demonstrating pretext and summary judgment in favor of defendant is warranted on plaintiff's claim of race discrimination.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 20) is **granted.**

**IT IS SO ORDERED.**

Dated this 26th day of January, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
